# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| K.K.J.B.,<br>a minor child, by Next Friend Chastity Robinson<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL ASTRUE,<br>Commissioner of Social Security<br><br>　　　　Defendant. | Case No. 11-3057-CV-S-NKL-SSA |

## ORDER

Before the Court is the Social Security Complaint [Doc. # 3] of Plaintiff K.K.J.B, a minor child. For the following reasons, the Court reverses and remands the decision of the Administrative Law Judge ("ALJ").

**I.　Background.**[1]

This case involves a claim by a minor child who alleges disability for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C., §§138, *et seq*. Plaintiff contests the Defendant's finding that he is not under a disability, as defined in the Social Security Act. At the time of the administrative hearing, Plaintiff was six years of age and a preschooler. He alleges disability beginning May 8, 2007, due to ADHD

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

(attention deficit hyperactivity disorder), ODD (oppositional defiant disorder), and separation anxiety.

### A. Medical Evidence

Plaintiff received care from Gretchen Brandhorst, Psy.D., at Burrell Behavioral Health at various times during the period June 4, 2007 through July 25, 2007. Plaintiff was referred by his case manager due to symptoms associated with ADHD and separation anxiety. Alan Aram, a non-evaluating psychologist, completed a Childhood Disability Evaluation form for the agency. He noted that there were impairments of ADHD and separation anxiety. Dr. Aram found the impairments to be "not severe."

Plaintiff received psychiatric medical care from Dr. Thomas Weeston and others at St. John's Regional Health Center from August 2007 through March 2009. On August 27, 2007, Dr. Weeston performed a psychiatric evaluation in which he diagnosed the Plaintiff with ADHD combined type, Separation Anxiety Disorder, and Oppositional Defiant Disorder. Dr. Weeston noted that the Plaintiff is "very impulsive with minimal ability to relay his demands or regulate his own emotions. This leads to frequent conflicts, fighting, hitting, and taking things from his sister." On September 4, 2007, Dr. Weeston provided a treatment plan including parenting classes, family therapy, and other support in education. He provided a Global Assessment Functioning score for the Plaintiff of 55. Pursuant to the records, the Plaintiff continued to portray the diagnosis of ADHD, Oppositional Defiant Disorder and Anxiety during his treatment at St. John's Regional Health Center.

Plaintiff received care from St. John's Regional Health Center for occupational therapy from September 17, 2008 through April 23, 2009. The records indicate Plaintiff continued to receive individual counseling at Burrell Behavioral Health Center from August 13, 2007 through January 14, 2009. The records show that an evaluation was performed when he was diagnosed with Attention Deficit Hyperactivity Disorder and Separation Anxiety. He was provided a Global Assessment Functioning score of 50. It was further noted that he exhibits an inappropriate and excessive anxiety when separated from home or those individuals that he is attached to. He expressed that he is worried that harm will come to him if he is not with his mother. He has demonstrated reluctance and refusal to attend head start. He will also refuse to go to sleep unless his mother is with him in his room.

The records show an Individualized Functional Assessment (IFA) form was completed on June 16, 2009, by Plaintiff's treating psychiatrist, Dr. Thomas Weeston. Dr. Weeston indicated he had known Plaintiff since August 27, 2007. Dr. Weeston indicated Plaintiff had a "marked" limitation in the first domain, acquiring and using information. It was noted by Dr. Weeston in the comments that the Plaintiff is below what is expected for his age level with regards to acquiring and using information. Dr. Weeston further noted in the second category, attending and completing tasks, that the Plaintiff had "marked" limitation. Dr. Weeston commented that the Plaintiff has problems with sustained focus and impulse control. In the remaining categories, Dr. Weeston found that there were no limitations.

### B. Administrative Hearing

On September 28, 2009, after a hearing, Administrative Law Judge (ALJ) Linda D. Carter rendered a decision in which she found that Plaintiff was not under a disability, as defined in the Social Security Act. (Tr. 16-26). On December 10, 2010, the Appeals Council of the Social Security Administration denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-5). Thus, the ALJ's decision stands as the final decision of the Commissioner.

### C. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of ADHD and an anxiety disorder, but that these impairments did not meet, medically equal, or functionally equal an impairment listed in the Listings of Impairments. Regarding the issue of functional equivalence, 20 C.F.R. § 416.926a(b)(2), the ALJ found that Plaintiff had "less than marked" limitations in the domain of acquiring and using information; "marked" limitations in the domain of attending to and completing tasks; and "less than marked" limitations in the domains of interacting and relating with others; moving about and manipulating objects; caring for self; and health and physical well-being. Because the ALJ found that Plaintiff did not have an "extreme" limitation in one domain or "marked" limitations in at least two domains, she determined that Plaintiff was not disabled.

## II. Discussion

### A. Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### B. Whether the ALJ Erred in Failing to Find a Severe Mental Impairment of Oppositional Defiant Disorder (ODD)

Plaintiff argues the ALJ erred by not finding that Plaintiff suffered a severe mental impairment of Oppositional Defiant Disorder (ODD). A "severe" impairment is one that more than minimally affects an individual's ability to perform work related activities. *See Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996).

On September 4, 2007, Plaintiff was diagnosed with "moderately severe" ODD by his treating psychiatrist, Dr. Thomas Weeston, who prescribed Risperdal and Clonodine for the ODD. [Tr. 252, 254-55, 320]. Dr. Weeston also noted in his treatment records that Plaintiff "is very impulsive with minimal ability to relay his demands or regulate his own emotions. This leads to frequent conflicts, fighting, hitting, and taking things from

5

his sister." [Tr. 278]. From September 2007 to at least March 2009, Dr. Weeston continued to assess Plaintiff with ODD. Plaintiff's mother's testimony is consistent with Dr. Weeston's findings, as she noted Plaintiff's defiant behaviors toward her and his teachers, as well as specific incidents of violent, impulsive, or destructive behavior, including incidents where Plaintiff hit other individuals, broke a table, and had crying fits. [Tr. 37-41].

Defendant concedes that the ALJ did not explain why she found Plaintiff's diagnosis of ODD to be non-severe, but argues that this failure constituted harmless error. Defendant argues that the mere prescription of psychotropic drugs and the presence of a mental disturbance is not sufficient for a finding of severe impairment. However, the record contains significantly more evidence than a prescription history and simple diagnosis. Dr. Weeston characterized the illness as "moderately severe," a fact never mentioned by the ALJ. Dr. Weeston also described Plaintiff's symptoms as including frequent conflicts, fighting, hour-long fits of crying, destruction of property, repeated distractions and refusal to obey authority figures. These findings do appear to constitute more than a de minimus impairment and neither the ALJ nor the Commissioner have explained why this evidence can be legitimately discounted or disregarded. Though the ALJ was justified in discounting the checklists within the Individualized Functional Assessment completed by Dr. Weeston, for the reasons presented in her decision,[2] she

---

[2] The Court finds that the ALJ acted reasonably in discounting the checklists within the Individualized Functional Assessments created by Plaintiff's attorney. The lack of a category in

provides no explanation for why she failed to evaluate or discuss the six pages of treatment records provided by the doctor. For the above reasons, Dr. Weeston's explicit finding of moderately severe ODD, combined with his listing of Plaintiff's symptoms, and the consistent testimony of Plaintiff's mother, clearly warrant a finding of severity for Plaintiff's ODD under the de minimis threshold to be used at Step Two.

Defendant argues that even if Plaintiff's ODD was severe, the Step Two finding did not prejudice Plaintiff's substantial rights because the ALJ was required in Step Three to consider all the functional limitations of Plaintiff's severe and non-severe impairments. However, because the ALJ failed to properly evaluate Dr. Weeston's medical opinion, the Court cannot determine from the ALJ's decision what effect, if any, Dr. Weeston's diagnosis of moderately severe ODD or his listing of Plaintiff's symptoms did in fact have on the ALJ's assessment of Plaintiff's functional limitations. *See McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (requiring remand if the court is unsure of what weight the ALJ placed upon a treating physician's opinion). Thus, for the above reasons, the Court finds that the ALJ's failure to find that Plaintiff's severe impairments included ODD constitutes reversible error and is thus remanded to the ALJ for reconsideration.

### C. Whether the ALJ Erred in Assessing Plaintiff's Limitations

---

between "No Limitation" and "Marked Limitation" did not provide evaluators with sufficient options by which to accurately evaluate the functional limitations created by Plaintiff's impairments.

Plaintiff argues that the ALJ erred in failing to find that Plaintiff suffered from marked limitations in the domains of moving and manipulating objects, and acquiring and using information. Because of the deficiencies at Steps Two and Three in failing to adequately consider Dr. Weeston's medical reports, the ALJ did not properly assess the limitations suffered by Plaintiff upon the whole record. The Court finds, however, that Dr. Weeston's reports would not have altered the ALJ's decision concerning Plaintiff's lack of a marked limitation in the domain of moving about and manipulating objects. Dr. Weeston himself, along with Plaintiff's mother, found that Plaintiff had no limitation in moving or manipulating objects, and the occupational therapy report cited by Plaintiff suggested that Plaintiff was expected to meet his long-term occupational therapy goals within 12 months. [Tr. 121; 344-45; 376-377]. Thus, substantial evidence does support the ALJ's finding of no marked limitation in moving or manipulating objects.

However, the Court finds that the ALJ's failure to consider Dr. Weeston's medical opinions when evaluating Plaintiff's limitation in the domain of acquiring or using information was reversible error. Dr. Weeston's listing of Plaintiff's symptoms, including information about Plaintiff's minimal ability to relay his demands, was ignored by the ALJ despite being relevant to an assessment of Plaintiff's limitation in acquiring and using information. Though the ALJ could use her discretion to discount the checklists presented in the attorney-prepared Individualized Functional Assessments, there has been no explanation for why the ALJ would be justified in ignoring Dr. Weeston's comments in the IFA which noted that Plaintiff was below what is expected

for his age level in acquiring and using information. Because of the weight given to the evaluations of treating physicians when assessing a claimant's limitations, the ALJ must reevaluate whether Plaintiff suffers a marked limitation in the domain of acquiring and using information based on the evidence presented in the whole record, including Dr. Weeston's medical reports.

## III. Conclusion

It is hereby ORDERED that the matter be REMANDED to the ALJ for reconsideration consistent with this order.

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: October 6, 2011
Jefferson City, Missouri